Henry P. Dudzin v. Commissioner. Henry P. Dudzin and Libbie Dudzin v. Commissioner. Estate of John Dudzinski, Deceased, Mary Dudzinski, Executrix v. Commissioner.
Dudzin v. Commissioner
Docket Nos. 45492-45494.
United States Tax Court
T.C. Memo 1954-179; 1954 Tax Ct. Memo LEXIS 67; 13 T.C.M. (CCH) 980; T.C.M. (RIA) 54285; October 19, 1954, Filed *67 Reconstruction of income: Adequacy of books. - The books kept by taxpayers, who operated a meat market and also entered into real estate transactions, adequately reflected their total income, and the taxpayers therefore overcame the presumption of correctness of the Commissioner's determination of income by the net worth method. The books reflected all sales and expenses but did not account for inventory and capital accounts. However, there was a negligible inventory at the end of each year, and capital expenditures were easily ascertainable. William F. Snyder, Esq., Union Commerce Building, Cleveland, Ohio, for the petitioners. James A. Scott, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined the following deficiencies in income tax: Year
Deficiency
Docket No. 45492
1946
$3,023.86
1947
3,642.92
Docket No. 45493
1944
2,049.57
1945
1,125.30
Docket No. 45494
1944
2,624.26
1945
4,694.05
1946
3,130.02
The only questions for decision are the proper amounts of taxable income for petitioners in the taxable years. Findings of Fact The stipulated *68 facts are so found and the stipulation is included herein by reference. During the taxable years John Dudzinski lived in Lakewood and Cleveland, Ohio. He died in 1952. Mary Dudzinski in his widow and duly appointed executrix. Henry P. Dudzin is the son of John Dudzinski. Libbie Dudzin is his wife. They currently reside in Cleveland, Ohio. The income tax returns here involved were filed with the collector of internal revenue for the eighteenth district of Ohio. Beginning in 1914 and continuing through the taxable years John bought and sold numerous pieces of real estate. Henry also had a number of real estate transactions during the taxable years. Several pieces of real estate were jointly owned by John and Henry. Both received rental income from real estate. From 1921 until 1940 John operated a meat market in Lakewood, Ohio. Henry worked for his father in the market until 1935 when he began the operation of a grocery in the same building with the meat market. In 1940 Henry traded the grocery business for the meat market. John turned the grocery over to a daughter who has since continued to operate it. From early 1940 until he entered the armed services in July 1943 Henry *69 operated the meat business. John worked in the market but got no share in the profits. When Henry went into the service, John took over the operation of the meat market in return for a 50 percent share of the proceeds. The two continued to share profits of the business until John's death in 1952. During the taxable years John or Henry kept books which reflected their meat market operations. The books were of the single entry type and reflected all sales and expenses. They reflected weekly, monthly and yearly summaries but did not contain such general ledger accounts as inventory, capital improvements or capital distributions. Such accounts could be ascertained, however, from other information maintained by John or Henry. Year-end inventories of the meat market averaged about $150 and the only capital expenditure was a meat counter which cost about $2,000. Records were also kept of the real estate transactions showing rental income received, expenses incurred, and other data from which the capital gains on sales could be computed. The following schedule shows the adjusted gross income as reported by John and Mary for the taxable years: John 1944
$3,290.45
John 1945
3,066.44
Mary 1945
2,948.50
John 1946
4,444.39
Mary 1946
1,228.18
*70 The following schedule shows the adjusted gross income reported by Henry and Libbie for the taxable years: 1944 Joint
$4,131.77
1945 Joint
4,065.45
1946 Henry
6,382.33
1946 Libbie
3,493.51
1947 Henry
5,966.87
1947 Libbie
2,523.71
The Commissioner determined deficiencies by the net worth plus expenditures method. By that method the net income of petitioners was determined as follows: (Petitioners)
Estate of John
1944
$11,322.59
Estate of John
1945
15,582.10
Estate of John
1946
13,944.36
Henry and Libbie
1944
10,482.32
Henry and Libbie
1945
7,760.25
Henry
1946
14,982.37
Henry
1947
16,225.63
Aside from pay from the armed services, neither John nor Henry had any source of income during the taxable years other than from the businesses described above, their real estate capital gains and rentals. During the years here involved the respective petitioners realized the following net taxable income from the meat market: John and
Henry and
Year
Mary
Libbie
1944
$4,083.91
$5,013.90
1945
3,738.37
4,778.36
1946
4,947.32
4,947.32
1947
4,255.03
4,255.03
During the taxable years the *71 respective petitioners disposed of various pieces of real estate and realized the following long-term capital gains: Petitioner
Year
Capital Gain
John and Mary
1945
$9,518.33
John and Mary
1946
7,860.02
Henry and Libbie
1946
7,534.20
During the taxable years the respective petitioners realized net taxable rental income as follows: Net Taxable
Petitioner
Year
Income
John and Mary
1944
$1,457.88
John and Mary
1945
1,317.81
John and Mary
1946
865.44
John and Mary
1946
268.70
Henry and Libbie
1947
4,501.73
In addition to the taxable income above set forth petitioners John and Henry each took his requirements of meat averaging $5 per week from the meat market vusiness. This amount should be added to petitioners' taxable income. Opinion Because he found that petitioners during the taxable years had engaged in a number of real estate transactions requiring the expenditure of large amounts of money grossly out of proportion to their reported income, the Commissioner resorted to the net worth plus expenditures method in determining the deficiencies here involved. The burden of overthrowing the presumptive correctness *72 of the Commissioner's determination is thus imposed on petitioners. We think petitioners have successfully carried their burden. They produced their books in court and called as a witness a certified public accountant who testified that he was able to compute from the books and records maintained for the meat business and the real estate transactions the proper taxable income of petitioners. The results of his computations are reflected in our findings. Certain arithmetical mistakes and omissions from income as reported by petitioners will be thereby corrected. The question is one of fact and is disposed of by our findings which we think are amply sustained by the evidence. The Commissioner called as a witness a retired agent who had been in"charge of the fraud squad." He testified inconclusively concerning a conference had with John. The only other witness called by the Commissioner testified with regard to the records maintained showing past returns filed by petitioners as well as assessments and payments of tax. Petitioners rely on their books and records, and, in the alternative, attack the correctness of certain items of the Commissioner's net worth statement, particularly *73 starting cash and living expenses. We see no need for extended discussion of the alternate contention. We recognize that the net worth method can be employed as evidence of unreported income and as evidence that the books and records are inadequate, inaccurate or false. . No fraud is here involved. At most, as we view the record, the books were inadequate or inaccurate in certain minor respects. These deficiencies have been corrected by evidence of record which we believe is sufficient to overcome the presumptive correctness of the determination based on the net worth plus expenditures method. Cf. . Our findings with respect to the net taxable income of petitioners will be reflected in a computation under Rule 50. Decisions will be entered under Rule 50.